**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**MOLLY ANN MAHANY,**

                              **Plaintiff,**

**v.**                                                        **14-CV-693ASr)**

**THE POLICE DEPARTMENT FOR THE CITY**
  **OF BUFFALO, STATE OF NEW YORK,**

**and**

**THE DISTRICT ATTORNEY'S OFFICE**
  **FOR THE COUNTY OF ERIE,**
  **STATE OF NEW YORK,**

                              **Defendants.**

_____

<u>**REPORT, RECOMMENDATION AND ORDER**</u>

        This matter was referred to the undersigned by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #16.


        Currently before the Court is plaintiff's motion to vacate prior judgments

(Dkt. #3); the Police Department for the City of Buffalo, State of New York's ("Buffalo

Police Department's"), motion to dismiss this action (Dkt. #27); the District Attorney's

Office for the County of Erie, State of New York's ("Erie County District Attorney's

Office's"), motion to dismiss this action pursuant to Rule 12(b)(6) and for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. #31);

and plaintiff's motion to amend her complaint.  Dkt. #38.  For the following reasons, it is

recommended that plaintiff's motions be denied and defendants' motions be granted.

## FACTUAL BACKGROUND

Plaintiff[1] commenced this action, pursuant to 42 U.S.C. § 1983, by filing a

complaint in this Court on August 22, 2014, alleging that on July 1, 2001, Detective

Borelli with the Buffalo Police Department and Investigator Vickered with the Erie

County District Attorney's Office, along with other representatives of the City of Buffalo

Police Department and Erie County District Attorney's Office: (1) created false evidence

which deprived plaintiff of her constitutional protections and civil rights; (2) refused to

enforce court orders, including orders of protection, and refused to protect plaintiff from

and prosecute a sociopath, leaving her destitute and depriving her of her children;[2] (3)

denied her notice of proceedings to which she was a party, resulting in the annihilation

of her property rights and denial of plaintiff's right to counsel, medical treatment, access

to the courts and other government agencies, law enforcement protection, victim

support services, custody of her children, military insurance, privacy rights and mail;

and (4) entered false and fraudulent information about plaintiff into law enforcement

database, depriving plaintiff of:

> my health, my own business, which was then thriving, my
> professional license, my reputation, the imminent onset of
> the receipt of my monthly military pension, near perfect
> credit, ownership interests in real property, financial security,
> professional standing, a social support network, my retired
> military health insurance, very little indebtedness, my whole
> life insurance policy, reliable vehicles, a professional nanny,
> mortgage approval in solely my own name, sole access to
> and exclusive possession of a substantial amount of
> personal property, whose replacement value was estimated

---

[1] Plaintiff is an attorney admitted to practice law in New York, but her registration is currently suspended. *See* http://iapps.courts.state.ny.us/attorney/AttorneySearch

[2] Plaintiff's children are currently 24, 22 and 19 years old.  Dkt. #2, p.3.

> to be $300,000, but much of which was irreplaceable and
> invaluable, four steady sources of income, or more lucrative
> work than I could possibly take on, and legal as well as
> actual Sole Custody of my four then remarkable happy,
> healthy, intact, enthusiastic, optimistic, and still somewhat
> unscathed children, all of whom were then enrolled in private
> schools . . .

Dkt. #1.

On the same date, plaintiff moved to vacate, nullify, or otherwise set aside

any judgments resulting from the injustices sustained as a result of the events

commencing on July 1, 2001.  Dkt. #3.  In this motion, plaintiff alleges that on August 1,

1999, her husband[3] retired from active military duty and began a campaign of physical,

emotional and financial violence against her, causing plaintiff to flee  with her children to

a family home in Buffalo.  Dkt. #3, ¶¶ 9-10.  Plaintiff indicates that she separated from

her husband on April 14, 2000.  Dkt. #9, p.72.  A Buffalo Police Department report

indicates that in December of 2000, plaintiff complained that her husband came over to

bring Christmas gifts for his children, got into an altercation with plaintiff, refused to

leave and hit her with the door as he exited the residence.  Dkt. #9, p.17.  Plaintiff's

husband was charged with harassment, second degree, in Buffalo City Court.  Dkt. #9,

p.18.

On April 29, 2001, plaintiff complained to the Buffalo Police Department

that her husband "did push, shove and strike" plaintiff and had been abusive in the past.

Dkt. #9, p.15.  On April 30, 2001, plaintiff received an *ex parte* temporary order of

---

[3] Plaintiff's husband is now deceased.  Dkt. #2, p.3.

protection from Buffalo City Court.  Dkt. #9, p.21.  On May 7, 2001, plaintiff's husband

was charged with three counts of endangering the welfare of a child, as well as several

counts of harassment, second degree.  Dkt. #3, ¶ 14.  On May 18, 2001, plaintiff

complained to the Buffalo Police Department that

> she and her children have been continually exposed to
> fighting, swearing, mental and physical abuse by their father.
> He has assaulted mother in front of children and mother
> states that he lets children be in company of a known sexual
> predator, a relative . . . She states she is making this report
> of past and current problems because [husband] wants
> unsupervised visits with children.

Dkt. #9, p.16.


By Order entered May 25, 2001, Hon. Sharon S. Townsend granted the

petition of plaintiff's husband for temporary visitation of his children through the

Salvation Army Visitation Program.  Dkt. #9, p.52.  The Order states that plaintiff

"appeared before the Court to answer the petition, has been advised by the Court of the

right to counsel, and to show why an order of visitation should not be granted." Dkt. #9,

p.52.


During the course of their investigation, plaintiff alleges that Detective

Borelli and Investigator Vickered manufactured evidence against plaintiff, testified

falsely against plaintiff, and disseminated false information about plaintiff through law

enforcement databases.  Dkt. #3, ¶¶ 20-23. Specifically, plaintiff alleges that Detective

Borelli and Investigator Vickered falsely claimed that plaintiff "merely hallucinated over a

decade of what was, in actual fact, the sometimes chronic and always injurious acts of

violence and other such crimes by our perpetrator, against myself as well as my

children." Dkt. #3, ¶ 26. In other documents, plaintiff alleges that Detective Borelli

made several false reports to Child Protective Services and fabricated a report that

plaintiff was involved in a violent physical altercation. Dkt. #21, ¶¶ 15-16, 18 & 22.

Plaintiff further alleges that Detective Borelli and Investigator Vickered fraudulently

created medical documents diagnosing plaintiff as a pedophile suffering from

Munchausen-by-Proxy and Mania. Dkt. #21, ¶ 27.

Following "the fraudulent creation of said ostensible evidence in July

2001," plaintiff alleges that she and her children were "consistently and

comprehensively . . . denied all police protection, law enforcement, warrant cards, crime

victims' advocacy, criminal accountability &/or other such legal safeguards intended to

protect one's immediate as well as future safety" and her husband "was allowed, if not

outright encouraged, by the law enforcement officials herein . . . to repeatedly commit

ongoing acts of violence, fraud, theft, endangerment, perjury, assault, forgery, identity

theft, contempt, vandalism, abuse, trespass, larceny, obstruction of justice, and other

such illegalities against myself and my children, which he did for years with complete

impunity &/or without any possibility of prosecution for criminally so doing." Dkt. #3,

¶¶ 41-42. Plaintiff further alleges that she "was essentially forever barred from having

further contact with [her] own children." Dkt. #3, ¶ 49. Plaintiff specifically seeks to

vacate "whatever dissolution decree that was issued by the Erie County Supreme

Court, State of New York, sometime in 2003, and any other judicial awards that may

have been granted in conjunction therewith, of which I only inadvertently first became

aware in &/or around April 2014, or several months ago" and "any judgments, orders,

&/or decrees purported to have been issued by the Circuit Court of the City of Virginia

Beach, Commonwealth of Virginia, subsequent to the creation and ensuing

dissemination of falsified documents . . . by Detective Borelli and Investigator Vickered."

Dkt. #3, ¶ 55.  As a result of these falsehoods, plaintiff alleges that her husband

procured various judgments, orders and other judicial decrees without notice to plaintiff.

Dkt. #3, p.30. Plaintiff further alleges that she has attempted to obtain return of her

personal property and financial interests from the courts without success.  Dkt. #3, p.29.

Plaintiff alleges that she attempted to regain custody of her children from

multiple courts in both Erie County and Virginia Beach, Virginia, but only learned of the

existence of four Erie County  Family Court orders issued between January of 2002 and

July of 2008 (or sometime around July of 2009), awarding custody of the children to her

husband.  Dkt. #3, pp.26-27 & Dkt. #48, ¶ 101. Plaintiff alleges that the Erie County

Family Court Orders falsely state that she was physically present in said courtroom at

the time of their issuance and had been advised of, and allegedly waived, her right to

legal counsel at all four of the hearings. Dkt. #27 & Dkt. #48, ¶ 101.

Plaintiff moved for entry of default on April 14, 2016.  Dkt. #5.  That

motion was denied for failure to provide proof of service.

On October 12, 2016, the Hon. Richard J. Arcara issued an order to show

cause why this case should not be dismissed for failure to prosecute.  Dkt. #8.  In

response to plaintiff's request for additional time, Judge Arcara afforded plaintiff thirty days to effect proper service of her complaint.  Dkt. #10.

Plaintiff filed an amended complaint on December 9, 2016.  Dkt. #13. The amended complaint alleges the same four causes of action.  Dkt. #13.

**DISCUSSION AND ANALYSIS**

The Buffalo Police Department and the Erie County District Attorney's Office argue that they are not legal entities subject to suit. Dkt. #27-1, pp.5-6 & Dkt. #31-2, pp.5-6. Dkt. #31-2, pp.5-6.  The Erie County District Attorney's Office also argues that it is immune from suit for money damages pursuant to the immunity afforded by the Eleventh Amendment to the United States Constitution. Dkt. #31-2, pp.5-6.

The City of Buffalo and County of Erie argue that the amended complaint is futile because plaintiff has failed to state a plausible *Monell* claim and, to the extent she seeks to assert state law claims, plaintiff has failed to comply with the requirements set forth in New York's General Municipal Law §§ 50-e and 50-I.  Dkt. #27-1, pp.6-13; Dkt. #31-2, p.12 & Dkt. #43, p.10.  Furthermore, the County of Erie argues that this Court should decline to exercise pendent jurisdiction over any state law claims.  Dkt. #31-2, p.12.  Finally, defendants argue that plaintiff's claims are barred by the statute of limitations. Dkt. #27-1, p.15; Dkt. #31-2, pp.14-15 & Dkt. #43, p.10.

Plaintiff responds that her complaint is sufficient and argues that the statute of limitations does not bar her complaint because of her special relationship with the Buffalo Police Department, who knew that their inaction would lead to plaintiff's harm. Dkt. #34.  Plaintiff also responds that this is a federal suit presenting a federal question arising under federal law.  Dkt. #48, ¶ 27.  Furthermore, plaintiff asserts that she "has always acted with more than reasonable due diligence as to all matters herein."  Dkt. #48, ¶ 33.

Standard of Review

Fed. R. Civ. P. 21 provides that "the court may at any time, on just terms, add . . . a party."  Fed. R. Civ. P. 15(a) provides that a party may amend a pleading with the opposing party's written consent or the court's leave, which is to be given freely when justice so requires.  Leave to amend should be granted unless the party seeking leave has acted in bad faith, there has been an undue delay in seeking leave, there will be unfair prejudice to the opposing party if leave is granted, or the proposed amendment would be futile.  *Foman v. Davis,* 371 U.S. 178, 182 (1962); *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); Fed. R. Civ. P.15(a).  An amendment is futile if it cannot survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000).

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may

move for judgment on the pleadings."  Courts faced with motions under Rule 12(c)

apply the same standard used to decide motions brought under Rule 12(b)(6).  *Patel v.*

*Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).


To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.  Application of this standard is "a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense."

*Id.* at 679.


"In adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration "to facts stated on the face of the complaint or incorporated in the

complaint by reference, and to matters of which judicial notice may be taken."  *Leonard*

*F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *See also*

*Kramer v. Time Warner, Inc*., 937 F.2d 767, 773 (2d Cir. 1991).  "Where a plaintiff has

relied on the terms and effect of a document in drafting the complaint and that

document is thus integral to the complaint," the district court may consider the contents

of the document "even if it is not formally incorporated by reference."  *Broder v.*

*Cablevision Sys. Corp*., 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted),

*quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  "If the documents referenced in the complaint contradict the facts alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations." *Olin Corp. v. E.I. Dupont De Nemours and Corp.*, No. 05-CV-100S(SC), 2006 WL 839415 (W.D.N.Y. March 27, 2006).

Buffalo Police Department

In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of the Buffalo Police Department to be sued is determined by New York law, which provides that a police department is an administrative arm of the municipal corporation, which cannot be sued because it does not exist separate and apart from the municipality and does not have its own legal identity. *Baker v. Willett*, 42 F. Supp.2d 192, 198 (N.D.N.Y. 1999); *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990).  As a result, it is recommended that the motion to dismiss the Buffalo Police Department (Dkt. #27), be granted.

Erie County District Attorney's Office

In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of the District Attorney's Office to be sued is determined by New York law, which provides that the District Attorney's Office does not have a legal existence separate from the District Attorney. *Woodward v. Office of District Attorney*, 689 F. Supp.2d 655, 658 (S.D.N.Y. 2010); *Gonzalez v. City of N.Y.*, No. 98 CIV 6081, 1999 WL 549016, at *1 (S.D.N.Y. July 28, 1999).  As a result, "the District Attorney's Office is

not a suable entity." *Id.* (dismissing § 1983 action)*, citing Steed v. Delohery*, No. 96 Civ.

2449, 1998 WL 440861, at *1 (S.D.N.Y. Aug. 4, 1998) (dismissing New York County

District Attorney's Office); *See Bonilla v. Connerton*, 3:15-CV-1276, 2016 WL 2765287,

at *4 (N.D.N.Y. April 14, 2016) (Broome County District Attorney's Office not "amenable

to suit.").  As a result, it is recommended that the motion to dismiss the Erie County

District Attorney's Office (Dkt. #31), be granted.


          *Monell* Claim

          "The purpose of § 1983 is to deter state actors from using the badge of

their authority to deprive individuals of their federally guaranteed rights and to provide

relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

Section 1983 creates no substantive rights, however; it provides only a procedure for

redress for the deprivation of rights established elsewhere. *Sykes v. James*, 13 F.3d

515, 519 (2d Cir. 1993), cert. denied, 512 U.S. 1240 (1994). Thus, to state a § 1983

claim, a plaintiff must allege: (1) the deprivation of a right, privilege or immunity secured

by the Constitution and it laws by (2) a person acting under the color of state law.  42

U.S.C. § 1983.


          A municipality cannot be held vicariously liable under § 1983 for the

constitutional torts of its employees, nor can it be subject to liability pursuant to a theory

of *respondeat superior*, but is only liable when it can be fairly said that the municipality

itself is the wrongdoer.  *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992);

*Canton v. Harris*, 489 U.S. 378, 385 (1989). Thus, a plaintiff seeking to impose liability

on a municipality or other local government must allege that the constitutional

deprivation was caused by "action pursuant to official municipal policy." *Connick v.*

*Thompson,* 563 U.S. 51, 60-61 (2011), *quoting Monell v. New York City Dep't of Soc.*

*Servs.*, 436 U.S. 658, 691 (1978).  "Official municipal policy includes the decisions of a

government's lawmakers, the acts of its policymaking officials, and practices so

persistent and widespread as to practically have the force of law." *Id.* at 61.  "[T]o

show a policy, custom, or practice for purposes of *Monell* a plaintiff may allege (1) the

existence of a formal policy which is officially endorsed by the municipality; (2) actions

taken or decisions made by municipal officials with final decision making authority,

which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent

and widespread that it constitutes a custom of which constructive knowledge can be

implied on the part of policymaking officials; or (4) a failure by policy makers to properly

train or supervise their subordinates, amounting to deliberate indifference to the rights

of those who come in contact with municipal employees." *Calicchio v. Sachem Cent.*

*Sch. Dist.*, 185 F. Supp.3d 303, 315-16 (E.D.N.Y. 2016).  In the instant case, plaintiff's

allegations against an Investigator at the Erie County District Attorney's Office and a

City of Buffalo Police Officer fail to suggest any basis for liability pursuant to *Monell*.

Accordingly, it is recommended that the motion to amend the complaint to add the City

of Buffalo and the County of Erie as defendants be denied.


Statute of Limitations

The statute of limitations for claims brought pursuant to 42 U.S.C. § 1983

is determined by state law, and in New York, that statute of limitations is three years.

*Owens v. Okure*, 488 U.S. 235, 251 (1989).  The accrual date for such a claim "is a question of federal law that is *not* resolved by reference to state law."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  In accordance with federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of her action.  *Singleton v. City of N.Y.*, 632 F.2d 185, 191 (2d Cir 1980), *cert. denied*, 450 U.S. 920 (1981).

Plaintiff commenced this action on August 22, 2014.  Dkt. #1.  Accordingly, to be timely, the constitutional injury alleged by plaintiff must have occurred no earlier than August 22, 2011.  However, plaintiff's complaint, amended complaint and proposed amended complaint alleges that her injuries were caused by the actions of Investigator Vickered and Detective Borelli on July 1, 2001, more than thirteen years prior to the filing of her complaint.  Thus, even if plaintiff were granted leave to amend her complaint to add these individual defendants as parties, her claim would be barred by the statute of limitations.

**CONCLUSION**

For the reasons set forth above, it is recommended that plaintiff's motion to vacate prior judgments (Dkt. #3), be denied as beyond the jurisdiction of this Court; the Buffalo Police Department's motion to dismiss this action (Dkt. #27), be granted; the Erie County District Attorney's Office's motion to dismiss this action pursuant to Rule 12(b)(6) and for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules

of Civil Procedure (Dkt. #31), be granted; and plaintiff's motion to amend her complaint

(Dkt. #38), be denied as futile.


Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:


This Report, Recommendation and Order be filed with the Clerk of the

Court.


ANY OBJECTIONS to this Report, Recommendation and Order must be

filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute,

Fed.R.Civ.P. 72(b) and Local Rule 72(b).


The district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but were not presented to

the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v.*

*Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).


Failure to file objections within the specified time or to request an

extension of such time waives the right to appeal the District Court's Order.  *Thomas v.*

*Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*,

838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:      Buffalo, New York
            January 9, 2018**

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**